# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **RESEARCH IN MOTION LTD. and RESEARCH IN MOTION CORP.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:08-cv-02075-K** |
| **EASTMAN KODAK COMPANY,** | |
| **Defendant.** | |

<u>**RIM'S INVALIDITY CONTENTIONS**</u>

## I.      INTRODUCTION

Plaintiffs Research In Motion Ltd. ("RIM Ltd.") and Research In Motion Corporation ("RIM Corp.") (collectively "RIM"), by their attorneys, make these Preliminary Invalidity Contentions concerning U.S. Patent Nos. 5,493,335 (the "'335 patent"), 6,292,218 (the "'218 patent"), 6,600,510 (the "'510 patent"), and 5,266,161 (the "'161 patent") (collectively "the Patents-In-Suit") in connection with the above-referenced action, pursuant to the Court's Scheduling Order and paragraph 3-3 of Miscellaneous Order No. 62 (the "local patent rules"). The citation of prior art herein and the accompanying exhibits are being disclosed as, and should be construed as nothing more than, RIM's Invalidity Contentions.  These documents are not intended to include or otherwise reflect RIM's claim construction contentions, which will be disclosed in due course pursuant to the Scheduling Order and the local patent rules.

RIM's Preliminary Invalidity Contentions herein reflect RIM's knowledge, thinking, and contentions as of this early date in the present action.  RIM reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to modify and supplement, without

prejudice, its Invalidity Contentions, whether in response to any amendment by Eastman Kodak Company ("Kodak") of its Infringement Contentions, or otherwise becoming aware of additional prior art. Additionally, RIM reserves the right to modify their contentions should any of the claim limitations be construed, whether previously construed or not, by the Court. RIM submits these Invalidity Contentions without waiving or contradicting RIM's position that Kodak's Infringement Contentions do not comply with the Local Patent Rules.[1]

Much of the art identified in the attached exhibits reflect common knowledge and the state of the art prior to at least one of the respective filing or asserted priority dates of the '335 patent, '218 patent, '510 patent, or '161 patent. In many instances, where a particular contention calls for combining references, any one of a number of references can be combined. The inclusion of certain exemplary combinations herein does not exclude other combinations based upon the claim charts attached hereto.

RIM hereby relies on and incorporates by reference, as if originally set forth herein, all invalidity positions, and all associated prior art and claim charts, asserted against Kodak by present or former defendants[2] in Kodak lawsuits (and all legal entities that are or were predecessors, successors, or otherwise related to Kodak)[3] or by potential or actual licensees to any of the Patents-In-Suit. RIM hereby discloses and identifies as if originally set forth herein,

---

[1] As noted by RIM's letter of May 19, Kodak's initial infringement contentions failed to comply with the local patent rules because they merely provided one claim chart per claim (regardless of the number of accused products and associated camera modules by various manufacturers), they did not identify terms that were means-plus-function terms, they failed to specifically identify certain accused components in RIM products, and otherwise failed to provide adequate notice of Kodak's infringement theories. Some of these issues, such as providing a mere one chart per asserted claim, were not addressed by Kodak's "supplemental" infringement contentions served on June 10, 2009.

[2] RIM also reserves the right to amend their Invalidity Contentions to include future Invalidity Contentions, including supplemental notices and contentions, served by defendants or potential licensees involving Kodak or its successors in interest.

[3] These lawsuits include, but are not limited to: 02-cv-6074T (W.D.N.Y.), 04-cv-6095T(F) (W.D.N.Y.), 6:08-cv-06511-MAT (W.D.N.Y.), 6:08-cv-06513-MAT (W.D.N.Y.), 6:07-cv-00352-LED (E.D. Tex.), and *Certain Mobile Telephones and Wireless Communication Devices Featuring Digital Cameras, and Components,* Inv. No. 337-TA-663 (ITC).

all prior art references listed and/or asserted in those Invalidity Contentions as invalidating prior art against any one of the '335 patent, '218 patent, '510 patent, and/or '161 patent.[4]  For instance, in a proceeding brought in the International Trade Commission, Kodak, as complainant, and Samsung and LG, as respondents, disclosed prior art relating to two of the present Patents-In-Suit.[5]  Further, RIM hereby discloses and identifies, as if originally set forth herein, all prior art references in those Invalidity Contentions listed as invalidating prior art against related (or purportedly related) U.S. Patent Nos. 5,206,951; 5,261,080; 5,303,379; 5,369,778; 5,421,012; 5,421,015; 5,634,124; 5,666,159; 5,828,406; 5,943,603; 6,122,526 (collectively, the "Related Patents").  Further, RIM also hereby discloses and identifies, as if originally set forth herein, all prior art references and invalidity arguments set forth in any reexamination or reissue proceedings, such as Reissue Application No. 12/370,098 for the '510 patent.  Moreover, RIM hereby reserves the right to supplement these Infringement Contentions based on prior art currently known to Kodak, such as documents responsive to at least RIM's Request For Production Nos. 15, 16, 28, and 60.

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, each of the asserted claims of each of the '335 patent, '218 patent, '510 patent, and '161 patent is anticipated by and/or obvious in view of one or more items of prior art identified herein alone or in combination.  Specific examples of this anticipation and obviousness, along with the motivation to combine the selected prior art, are set forth below.  These combinations are not intended to be exhaustive, as there are many possible combinations of the references listed herein and it is not practical, particularly at this early stage

---

[4]     Specifically, RIM incorporates by reference all prior art identified by Sun in Civil Action No. 02-cv-6074T, as well all prior art from ITC Inv. No. 337-TA-663 attached hereto as **Exhibit E.**

[5]     *See* Complainant Eastman Kodak Company's Notice of Prior Art Pursuant to Order No. 6, Ex. 1, Inv. No. 337-TA-663 (ITC June 12, 2009) (attached as Exhibit E-1); Respondents Samsung and LG's Supplemental Notice of Prior Art, Inv. No. 337-TA-663 (ITC June 19, 2009) (attached as Exhibit E-2).

prior to further factual investigation and claim construction proceedings, to identify and list all potentially relevant combinations.

## II.   IDENTIFICATION OF PRIOR ART – LOCAL PATENT RULE 3-3(A)(1)

The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent must be identified by its number, country of origin, and date of issue. Each prior art publication must be identified by its title, date of publication, and, when feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) must be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity that made the use or made and received the offer, or the person or entity that made the information known or to whom it was made known.  P.R. 3-3(a)(1).

### A.   Prior Art Invalidity of the '335 patent

#### 1.   Prior Art Patents and Patent Publications

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that the following additional prior art patents and patent publications anticipate or render obvious one or more asserted claims of the '335 patent under 35 U.S.C. §§102(a), (b), and/or (e) or 35 U.S.C. § 103:

| Prior Art U.S. Patents |
|---|
| U.S. Patent No. 3,971,065, Bayer, issued 07/20/1976 |
| U.S. Patent No. 4,213,145, Nagumo, issued 07/15/1980 |
| U.S. Patent No. 4,302,776, Taylor et al., issued 11/24/1981 |
| U.S. Patent No. 4,597,005, Baleshta et al., issued 06/24/1986 |
| U.S. Patent No. 4,746,993, Tada, issued 05/24/1988 |
| U.S. Patent No. 4,764,805, Rabbani et al., issued 08/16/1988 |
| U.S. Patent No. 4,774,562, Chen et al., issued 09/27/1988 |
| U.S. Patent No. 4,803,554, Pape, issued 02/07/1989 |
| U.S. Patent No. 4,837,628, Sasaki, issued 06/06/1989 |
| U.S. Patent No. 4,876,590, Parulski, issued 10/24/1989 |
| U.S. Patent No. 4,920,571, Abe et al., issued 04/24/1990 |
| U.S. Patent No. 5,014,059, Seckora, issued 05/07/1991 |

| |
|---|
| **U.S. Patent No. 5,016,107, Sasson et al., issued 05/14/1991** |
| **U.S. Patent No. 5,027,214, Fujimori, issued 06/25/1991** |
| **U.S. Patent No. 5,034,804, Sasaki et al., issued 07/23/1991** |
| **U.S. Patent No. 5,043,803, Asaida, issued 08/27/1991** |
| **U.S. Patent No. 5,067,019, Juday et al., issued 11/19/1991** |
| **U.S. Patent No. 5,097,518, Scott et al., issued 03/17/1992** |
| **U.S. Patent No. 5,128,776, Scorse et al., issued 07/07/1992** |
| **U.S. Patent No. 5,138,459, Roberts et al., issued 08/11/1992** |
| **U.S. Patent No. 5,153,730, Nagasaki et al., issued 10/06/1992** |
| **U.S. Patent No. 5,233,411, Nam et al., issued 08/03/1993** |
| **U.S. Patent No. 5,253,046, Shiraishi, issued 10/12/1993** |
| **U.S. Patent No. 5,280,343, Sullivan, issued 01/18/1994** |
| **U.S. Patent No. 5,280,347, Shiraishi et al., issued 01/18/1994** |
| **U.S. Patent No. 5,282,025, Sato, issued 01/25/1994** |
| **U.S. Patent No. 5,305,096, Yamagami et al., issued 04/19/1994** |
| **U.S. Patent No. 5,319,451, Sasaki, issued 06/07/1994** |
| **U.S. Patent No. 5,424,854, Hashimoto, issued 06/13/1995** |
| **U.S. Patent No. 5,479,206, Ueno, issued 12/26/1995** |
| **U.S. Patent No. 5,537,265, Sato, issued 07/16/1996** |
| **U.S. Patent No. 6,084,633, Gouhara et al., issued 07/04/2000** |

| **Prior Art Foreign Patents** |
|---|
| **British Patent No. GB2112603A, Ochi et al., issued 07/20/1983** |
| **Japanese Patent No. JP435181, Tsukamoto, issued 02/05/1992** |

### 2.    Prior Art Publications

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following publications anticipate or render obvious one or more asserted claims of the '335 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Publications |
|---|
| R. A. F. Belfor et al., "*Subsampling of Digital Image Sequences using Motion Information*," *in* MOTION ANALYSIS AND IMAGE SEQUENCE PROCESSING 189 (M. Ibrahim Sezan and Reginald L. Lagendijk eds., 1993) |

### 3. Prior Art Public Knowledge/Use/Sales/Offers for Sale

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following prior art anticipates or renders obvious one or more asserted claims of the '335 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Public Knowledge/Uses/Sales/Offers for Sale |
|---|
| **Olympus Deltis VC-1000 Camera** was known, offered for sale, sold, and/or used in the United States in 1993. The Deltis VC-1000 was a digital point and shoot camera that included an electronic viewfinder, removable memory for storing captured images, and offered users a choice of storing images in an uncompressed format or in a variety of JPEG compression levels. |
| **Olympus VC-100 Camera** was known, offered for sale, sold, and/or used in the United States in 1991. The Deltis VC-1000 was a digital point and shoot camera that included an electronic viewfinder, removable memory for storing captured images, and offered users a choice of storing images in an uncompressed format or in a variety of JPEG compression levels. |
| **Dycam 4/4XL** was known, offered for sale, sold, and/or used in the United States on or before 1993. The Dycam 4/4XL was a point and shoot digital camera that could capture 24-bit color images, and store eight standard resolution or twenty four low resolution frames. |
| **Kodak DCS family (including the Kodak DCS 1, 3, 5, and/or 200)** was known, offered for sale, sold, and/or used in the United States on or before December 1992. The Kodak DCS devices were a family of digital camera backs that adapted film SLRs for digital photography. The DCS family of digital camera backs placed an image sensor where the unexposed frame of file would normally be, and the shutter mechanism would expose the sensor to the focused image. Various models offered users a choice of compression levels for saving buffered images, including uncompressed TIFF and compressed JPEG formats. |

### 4. Prior art under 35 U.S.C. § 102(f)

Prior art under 35 U.S.C. § 102(f) must be identified by providing the name of each person from whom and the circumstances under which the invention or any part of it was derived. P.R. 3-3(a)(1).

Kodak has in its possession, custody, or control information related to or pertaining to prior art under 35 U.S.C. § 102(f) but has yet to produce that information in discovery. RIM will supplement these Invalidity Contentions if and when Kodak produces the information and RIM has had the opportunity to obtain and analyze that information.

### 5.    Prior Art under 35 U.S.C. § 102(g)

Prior art under 35 U.S.C. § 102(g) must be identified by providing the identity of each person or entity involved in and the circumstances surrounding the making of the invention before the patent applicant. P.R. 3-3(a)(1).

In addition to and including prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that each of the asserted claims of the '335 patent is invalid under 35 U.S.C. § 102(g) because before the alleged conceptions of the '335 patent, it is expected that evidence will show that the invention was made in this country by another who had not abandoned, suppressed, or concealed it  RIM sets forth below, to the extent currently known, the identities of the persons or entities involved in and the circumstances surrounding the making of the prior art invention before the applicant of the '335 patent:

| Prior Art under 35 U.S.C. § 102(g) |
|---|
| **Olympus** invented digital cameras including the Still Video VC100 and Deltis VC 1000, a digital camera including a CCD image sensor, a choice of playback processors and burst mode image capture, each at least as early as June 1993. |
| **Nikon** invented Nikon E2, a digital SLR camera that offered both single shot and buffered continuous shooting modes, at least as early as June 1993.  Users could choose from three JPEG compression modes, Basic, Normal, and Fine, or uncompressed TIFF. The number of images that could be stored in a single PCMCIA card depended on the chosen compression mode and the card's memory capacity.  A standard 15MB PC card EC-15, for example, held about 84 images in the BASIC mode. |
| **Dycam** invented Dycam 4/4XL, point and shoot digital cameras that could capture 24-bit color images, and store eight standard resolution or twenty four low resolution frames.  The Dycam cameras were invented, at least as early as June 1993. |

Should Kodak provide evidence of an earlier conception date, RIM reserves the right to assert that any of the 102(a), (b) and/or (e) prior art is 102(g) prior art.

B.    **Prior Art Invalidity of the '218 patent**

1.    **Prior Art Patents and Patent Publications**

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that the following additional prior art patents and patent publications anticipate or render obvious one or more asserted claims of the '218 patent under 35 U.S.C. §§102(a), (b), and/or (e) or 35 U.S.C. § 103:

| Prior Art Patents |
|---|
| U.S. Patent No. 4,302,776, Taylor et al., issued 11/24/1981 |
| U.S. Patent No. 4,456,931, Toyoda et al., issued 06/26/1984 |
| U.S. Patent No. 4,541,010, Alston, issued 09/10/1985 |
| U.S. Patent No. 4,546,390, Konishi et al., issued 10/08/1985 |
| U.S. Patent No. 4,691,253, Silver, issued 09/01/1987 |
| U.S. Patent No. 4,774,562, Chen et al., issued 09/27/1988 |
| U.S. Patent No. 4,802,020, Miyake et al., issued 01/31/1989 |
| U.S. Patent No. 4,821,121, Beaulier, issued 04/11/1989 |
| U.S. Patent No. 4,837,628, Sasaki, issued 06/06/1989 |
| U.S. Patent No. 5,040,068, Parulski et al., issued 08/13/1991 |
| U.S. Patent No. 5,067,019, Juday et al., issued 11/19/1991 |
| U.S. Patent No. 5,161,025, Nakao, issued 11/03/1992 |
| U.S. Patent No. 5,164,831, Kuchta et al., issued 11/17/1992 |
| U.S. Patent No. 5,173,779, Lee, issued 12/22/1992 |
| U.S. Patent No. 5,177,614, Kawaoka et al., issued 01/05/1993 |
| U.S. Patent No. 5,185,712, Sato et al., issued 02/09/1993 |

| Prior Art Foreign Patents |
|---|
| Japanese Patent Publication JP82-78281, Fujita et al., published 05/15/1982 |
| Japanese Patent No. JP57078281A, Kasakezaki et al., issued 05/15/1982 |

## 2.    Prior Art Publications

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following publications anticipate or render obvious one or more asserted claims of the '218 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Publications |
| --- |
| Robert McMahan, Pixel Photography: An Illustrated Introduction To Digital Photography (The Olive Press 1993) |
| R. A. F. Belfor et al., "*Subsampling of Digital Image Sequences using Motion Information*," *in* MOTION ANALYSIS AND IMAGE SEQUENCE PROCESSING 189 (M. Ibrahim Sezan and Reginald L. Lagendijk eds., 1993) |

## 3.    Prior Art Public Knowledge/Use/Sales/Offers for Sale

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following prior art anticipates or renders obvious one or more asserted claims of the '218 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Public Knowledge/Uses/Sales/Offers for Sale |
| --- |
| **Kodak DCS family (including the Kodak DCS 1, 3, 5, and/or 200)** was known, offered for sale, sold, and/or used in the United States on or before December 1992.  The Kodak DCS family included digital camera backs that adapted film SLRs for digital photography.  The DCS family of digital camera backs placed an image sensor where the unexposed frame of file would normally be, and the shutter mechanism would expose the sensor to the focused image.  Various models offered users a choice of compression levels for saving buffered images, including uncompressed TIFF and compressed JPEG formats. |
| **Fuji DS-200F** was known, offered for sale, sold, and/or used in the United States on or before December 1993.  Fuji DS-200F was a digital point and shoot camera that claimed to be the world's first digital camera with flash memory. |
| **Casio QV-10** was known, offered for sale, sold, and/or used in the United States on or before December 1994.  Casio QV-10 was a digital point and shoot camera that offered a color electronic viewfinder, and saved images to internal flash memory. |

**Olympus Still Video V100** was known, offered for sale, sold, and/or used in the United States on or before December 1988.  The V-100 still video camera was part of a modular system which included a V-200 or V-300 playback processor.  The V-100 used a ½-inch, 360K-pixel CCD with a 9-27mm f/2.8 zoom lens.  ISO 100.  Shutter 1/8 to 1/2000 second.  Built-in flash.  Hi-band still video mode.  Burst mode of 5, 10, 15 photos per second.

**Sony DKC-5000** was known, offered for sale, sold, and/or used in the United States on or before December 1993.  Sony DKC-5000 included three CCD imaging sensors, a preview monitor, and could store up to ten images in memory.  Optional accessories included a viewfinder attachment, and an 8-frame memory board.

**Nikon Video Still Camera Model 1** was known, offered for sale, sold, and/or used in the United States on or before October 1986.  Nikon Video Still Camera Model 1 was designed for digital imaging (a floppy disk based, black-and-white-only digital imaging camera) was showcased at Photokina '86. The displayed unit adopted a new QV-mount (can be converted into Nikon F-lens bayonet via an adapter), and a Nikkor 6 mm f/1.6 lens.

**Nikon QV-1000C Still Video Camera** was known, offered for sale, sold, and/or used in the United States on or before December 1988.  The Nikon QV-1000C was a digital SLR type monochrome electronic still camera that recorded images to a 2 inch floppy disc.  The QV-1000C could be mated with an external storage and modem transmission unit that included an electronic display.

**Olympus Deltis VC-1000 Camera** was known, offered for sale, sold, and/or used in the United States on or before 1994 in the United States.  The Deltis VC-1000 was a digital point and shoot camera that included an electronic viewfinder, removable memory for storing captured images, and offered users a choice of storing images in an uncompressed format or in a variety of JPEG compression levels.

**Olympus Deltis VC-1100 Camera** was known, offered for sale, sold, and/or used in the United States on or before 1994 in the United States.  The Deltis VC-1100 was a digital point and shoot camera that included an electronic viewfinder, removable memory for storing captured images, and offered users a choice of storing images in an uncompressed format or in a variety of JPEG compression levels.   The Deltis VC-1100 was also capable of transmitting images over a telephone link.

**Ricoh RDC-1** was known, offered for sale, sold, and/or used in the United States on or before 1995 and evidence may show that the RDC-1 was known, offered for sale, sold, and/or used in the United States on or before December, 1994.  Ricoh RDC-1 was a color point and shoot digital camera with an electronic viewfinder.  The Ricoh RDC-1 offered users a choice of saving images in "high" resolution mode, or in "economy" mode which would allow the user to save approximately twice as many images in the same amount of removable memory.

### 4.    Prior art under 35 U.S.C. § 102(f)

Kodak has in its possession, custody, or control information related to or pertaining to prior art under 35 U.S.C. § 102(f) but has yet to produce that information in discovery.  RIM will

supplement these Invalidity Contentions if and when Kodak produces the information and RIM has had the opportunity to obtain and analyze that information.

### 5. Prior Art under 35 U.S.C. § 102(g)

In addition to and including prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that each of the asserted claims of the '218 patent is invalid under 35 U.S.C. § 102(g) because before the alleged conceptions of the '218 patent, it is expected that evidence will show that the invention was made in this country by another who had not abandoned, suppressed, or concealed it.  RIM sets forth below, to the extent currently known, the identities of the persons or entities involved in and the circumstances surrounding the making of the prior art invention before the applicant of the '218 patent:

| Prior Art under 35 U.S.C. § 102(g) |
| --- |
| **Ricoh** invented Ricoh RDC-1, a digital camera including an electronic viewfinder, removable memory, and offered users a choice of compression modes, at least as early as 1994. |
| **Fuji** invented DS-200F, a digital camera including removable flash memory, at least as early as December 1993. |
| **Olympus** invented digital cameras including the Still Video VC100, Deltis VC 1000, and VC 1100, a digital camera including a CCD image sensor, a choice of playback processors and burst mode image capture, each at least as early as 1994. |
| **Nikon** invented digital cameras including the Nikon Video Still Camera Model 1, a digital camera including floppy disc based storage of captured digital images, at least as early as October 1986. |
| **Sony** invented Sony DKC-5000, a digital camera including three CCD image sensors, a preview monitor, and onboard image storage memory, at least as early as December 1993. |
| **Casio** invented Casio QV-10, a digital camera including a color electronic viewfinder and internal flash image storage memory, at least as early as December 1994. |

Should Kodak provide evidence of an earlier conception date, RIM reserves the right to assert that any of the 102(a), (b) and/or (e) prior art is 102(g) prior art.

C.     **Prior Art Invalidity of the '510 patent**

1.     **Prior Art Patents and Patent Publications**

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that the following additional prior art patents and patent publications anticipate or render obvious one or more asserted claims of the '510 patent under 35 U.S.C. §§102(a), (b), and/or (e) or 35 U.S.C. § 103:

| Prior Art Patents |
|---|
| U.S. Patent No. 2,110,444, Laub *et al.*, issued 03/08/1938. |
| U.S. Patent No. 4,876,590, Parulski, issued 10/24/1989 |
| U.S. Patent No. 5,105,197, Clagett, issued 04/14/1992 |
| U.S. Patent No. 5,195,086, Baumgartner, *et al.*, issued 03/16/1993 |
| U.S. Patent No. 5,249,053, Jain, issued 09/28/1993 |
| U.S. Patent No. 5,276,703, Budin *et al.*, issued 01/04/1994 |
| U.S. Patent No. 5,296,936, Pittas, *et al.*, issued 03/22/1994 |
| U.S. Patent No. 5,396,546, Remillard, issued 03/07/1995 |
| U.S. Patent No. 5,412,708, Katz, issued 05/02/1995 |
| U.S. Patent No. 5,467,403, Fishbine, *et al.*, issued 11/14/1995 |
| U.S. Patent No. 5,475,441, Parulski *et al.*, issued 12/12/1995. |
| U.S. Patent No. 5,495,284, Katz, issued 02/27/1996 |
| U.S. Patent No. 5,504,674, Chen *et al.*, issued 04/02/1996 |
| U.S. Patent No. 5,528,285, Morikawa, *et al.*, issued 06/18/1996 |
| U.S. Patent No. 5,550,646, Hassan, et al., issued 08/27/1996 |
| U.S. Patent No. 5,550,754, McNelley, *et al.*, issued 08/27/1996 |
| U.S. Patent No. 5,557,320, Krebs, issued 09/17/1996 |
| U.S. Patent No. 5,568,205, Hurwitz, issued 10/22/1996 |
| U.S. Patent No. 5,579,239, Freeman, *et al.*, issued 11/26/1996 |
| U.S. Patent No. 5,584,070, Harris, *et al.*, issued 12/10/1996 |
| U.S. Patent No. 5,684,918, Abecassis, issued 11/04/1997 |
| U.S. Patent No. 5,666,159, Parulski, *et al.*, issued 09/09/1997 |
| U.S. Patent No. 5,689,641, Ludwig *et al.*, 11/18/1997 |
| U.S. Patent No. 5,712,679, Coles, issued 01/27/1998 |

| U.S. Patent No. 5,737,491, Allen *et al.*, issued 04/07/1998 |
| U.S. Patent No. 5,754,227, Fukuoka, issued 05/19/1998 |
| U.S. Patent No. 5,760,824, Hicks III, issued 06/02/1998 |
| U.S. Patent No. 5,806,005, Hull *et al.*, issued 09/08/1998 |
| U.S. Patent No. 5,870,149, Comroe, *et al.*, issued 02/09/1999 |
| U.S. Patent No. 6,009,336, Harris, *et al.*, issued 12/28/1999 |
| U.S. Patent No. 6,026,088, Rostoker, *et al.*, issued 02/15/2000 |
| U.S. Patent No. 6,177,950, Robb, issued 01/23/2001 |
| U.S. Patent No. 6,278,481, Schmidt, issued 08/21/2001 |
| U.S. Patent No. 6,285,471, Pornbacher, issued 09/04/2001 |
| U.S. Patent No. 6,323,894, Katz, issued 11/27/2001 |
| U.S. Patent No. 6,366,698, Yamakita, issued 04/02/2002 |
| U.S. Patent No. 6,427,078, Wilska, *et al.*, issued 07/30/2002 |

| Prior Art Patent Publications |
| --- |
| UK Patent Application Publication No. 2320657, Burke, *et al.*, 06/24/1998 |
| European Patent Publication No. 0255767A2, Braun et al., published 02/10/1988 |

### 2.    Prior Art Publications

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following publications anticipate or render obvious one or more asserted claims of the '510 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Publications |
| --- |
| Bilal Awada, et al., *Testbed for a Multimedia Wireless Local Area Network*, IEEE, 1992, pgs. 122-25 |
| L. H. Ngoh, *Multicast Support for Group Communications*, Computer Networks and ISDN Systems, 22, 1991, pgs. 165-178 |
| Daniel Grotia and Sally Grotia, *A New Generation of Filmless Electronic Cameras Is Changing the Way Images are Created, Transmitted, and Manipulated*, Popular Science, September 1994, pg. 62 |
| Larry Armstrong and Larry Holyoke, *NASA's Tiny Camera Has a Wide-Angle Future*, Business |

| |
|---|
| Week, March 6, 1995, pgs. 54-55 |
| Aaron Weiss, *Stretching the Mbone,* Internet World, March 1995, pgs. 38-41 |
| Derby, et al., *Scoping Multicasts in WAN Interconnected Local Networks*, IBM Technical Disclosure Bulletin, January 1992, pgs. 68-71 |
| Lawrence Harte, Steve Prokup, Richard Levine, *Cellular and PCs - The Big Picture*, McGraw-Hill, 1997, pgs. 14-16 |
| Keith A. Hadley, *Kodak SV9600 Still Video Transceiver*, SPIE Proceedings, Optical Sensors and Electronic Photography, Vol. 1071, January 18, 1989, pgs. 238-45 |
| I. J. Armstrong and W. S. Haston, *Medical Decision Support for Remote General Practitioners Using Telemedicine*, Journal of Telemedicine and Telecare, 3, 1997, pgs. 27-34 |
| Cecilia Wessner, *Electronics*, Popular Science, June 1996, pg. 35 |
| Majid Rabbani, Scott Daly, *An Optimized Image Data Compression Technique Utilized in the Kodak SV9600 Still Video Transceiver*, SPIE Proceedings, Optical Sensors and Electronic Photography, Vol. 1071, January 18, 1989, pgs. 246-56 |
| Jay A. Kreibich, *The Mbone: the Internet's Other Backbone*, ACM, 1995, pgs. 5-7 |
| M. Lambert, *PCMAIL: A Distributed Mail System for Personal Computers*, June 1988. |
| *Getting Started Guide for Envoy and Envoy 150 Wireless Communicators*, Motorola, March 1994, pgs. vi, 1, 10, 11, 16, 17, 68, 69 |
| *The World's First PCMCIA Camera!!,* IC CARD SYSTEMS & DESIGN, September-October 1994, pg. 41 |
| *What's New*, POPULAR SCIENCE, September 1994, pg. 24 |
| Simon Linford, *Daylight for Digital*, BRITISH JOURNAL OF PHOTOGRAPHY, October 19, 1994, pgs. 20-21 |
| Chris O'Malley, *Computers and Software*, POPULAR SCIENCE, December 1996, pg. 29 |
| *Get the Digital Picture*, POPULAR SCIENCE, March 1997, pgs. 66-68 |
| Business Wire, *Sony Announces Photo-Editing Software Bundle and Free Wireless PC Transceiver for New DSC-F1 Digital Still Camera*, October 17, 1996 |
| *Motorola Envoy*, *available at* http://blakespot.com/nino/html/pdas_envoy.html |
| Chris King, *Pocketables Rewind : Motorola Envoy*, *available at* http://www.pocketables.net/2009/05/pocketables-rewind-motorola-envoy.html |
| *Envoy*, *available at* http://encyclopedia2.thefreedictionary.com/Envoy |
| Reference Manual, Novell GroupWise 4.1 for Windows, 1994 |
| Administration Guide, Novell GroupWise 4.1 for DOS, 1994 |
| Administration Guide, Novell GroupWise 4.1 for Unix, 1994 |
| Fax/Print Gateway Guide, Novell GroupWise 4.1 for DOS, 1994 |

| Message Server Guide, Novell GroupWise 4.1 for DOS, 1994 |
|---|
| Message Server Guide, Novell GroupWise 4.1 for Unix, 1994 |

### 3.      Prior Art Public Knowledge/Use/Sales/Offers for Sale

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following prior art anticipates or renders obvious one or more asserted claims of the '510 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Public Knowledge/Uses/Sales/Offers for Sale |
|---|
| **Prior art email systems,** including, for example, Lotus Notes 3.1 and/or Novell GroupWise 4.1, render obvious the '510 patent by describing a method for transmitting a digital image to a plurality of selected receiver units.  The prior art method includes attaching an image file to an e-mail, selecting a plurality of recipients for the e-mail, transmitting the e-mail with the image attachment and a header identifying the plurality of recipients, receiving the e-mail with the image attachment and the header at an e-mail server, and simultaneously providing the e-mail and the image attachment from the e-mail server to the plurality of recipients.  While RIM has currently provided one or more charts involving GroupWise, various prior art email systems render the claims of the '510 patent obvious and may be relied on. |
| **Olympus Deltis VC-1000 Camera** was known, offered for sale, sold, and/or used in the United States on or before April 24, 1995 in the United States.  The Deltis VC-1000 was a digital point and shoot camera that included an electronic viewfinder, removable memory for storing captured images, and offered users a choice of storing images in an uncompressed format or in a variety of JPEG compression levels. |
| **Olympus Deltis VC-1100 Camera** was known, offered for sale, sold, and/or used in the United States on or before April 24, 1995 in the United States.  The Deltis VC-1100 was a digital point and shoot camera that included an electronic viewfinder, removable memory for storing captured images, and offered users a choice of storing images in an uncompressed format or in a variety of JPEG compression levels.  The Deltis VC-1100 was also capable of transmitting images over a telephone link. |
| **Sony VAIO PCG-C1** was known, offered for sale, sold, and/or used in the United States on or before November 1998 in the United States.  Sony VAIO PCG-C1 anticipates and/or renders obvious the '510 patent by describing a digital camera including an image sensor for capturing an image, an A/D converter for converting the captured image to digital image data, a memory for storing the digital image data, and a transceiver for transmitting the digital image data.  The Sony VAIO PCG-C1 can use the transceiver to transmit the digital image data and a header identifying multiple selected receiver devices, and the transmitted digital image data can be simultaneously provided to each of the selected receiver devices. |
| **Motorola Envoy** was known, offered for sale, sold, and/or used in the United States as early as |

1994 in the United States.  The Motorola Envoy anticipates and/or renders obvious the '510 patent by describing a digital camera including a memory for storing digital data and a transceiver for transmitting the digital data.  The Motorola Envoy can use the transceiver to transmit digital image data and a header identifying multiple selected receiver devices, and the transmitted digital image data can be simultaneously provided to each of the selected receiver devices.

**Sony DSC-F1** was known, offered for sale, sold, and/or used in the United States on or before December 1996 in the United States.  Sony DSC-F1 anticipates and/or renders obvious the '510 patent by offering "a combination of features that includes a 1.8-inch LCD screen, built-in 4MB flash memory, high-speed wireless infrared image transfer, flash, rechargeable lithium-ion battery, and a host of recording modes."

**VLSI Vision PCMCIA** camera was known, offered for sale, sold, and/or used in the United States at least as early as 1994.  The VLSI Vision PCMCIA digital camera included an image sensor, an A/D converter, a memory, and a PCMCIA Type II interface for transferring digital image data to any computing device that included a PCMCIA Type II card slot.

**AT&T/Lucent** developed an image communication system and method that was known, offered for sale, sold, and/or used in the United States on or before April 24, 1995 in the United States. This system includes an image capture device which utilizes CCD technology to "take a picture", i.e., to capture an image, and then to generate a digital representation of that image which may be applied to a fax modem and then transmitted to a remote facsimile machine via a telephone communication link.

### 4. Prior art under 35 U.S.C. § 102(f)

Kodak has in its possession, custody, or control information related to or pertaining to prior art under 35 U.S.C. § 102(f) but has yet to produce that information in discovery.  RIM will supplement these Invalidity Contentions if and when Kodak produces the information and RIM has had the opportunity to obtain and analyze that information.

### 5. Prior Art under 35 U.S.C. § 102(g)

In addition to and including prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that each of the asserted claims of the '510 patent is invalid under 35 U.S.C. § 102(g) because before the alleged conceptions of the '510 patent, it is expected that evidence will show that the invention was made in this country by another who had not abandoned, suppressed, or concealed it.  RIM sets forth below, to the extent currently known,

the identities of the persons or entities involved in and the circumstances surrounding the making

of the prior art invention before the applicant of the '510 patent:

| **Prior Art under 35 U.S.C. § 102(g)** |
|---|
| **AT&T/Lucent** invented an image communication system and method includes an image capture device which utilizes CCD technology to "take a picture", *i.e.*, to capture an image, and then to generate a digital representation of that image which may be applied to a fax modem and then transmitted to a remote facsimile machine via a telephone communication link. |
| **Novell** invented the GroupWise e-mail system at least as early as the late 1980s (prior to the alleged conception for the '510 patent) that renders obvious the '510 patent by describing a method for transmitting a digital image to a plurality of selected receiver units. The method includes providing a handheld digital camera that includes an image sensor, an A/D converter, a memory, and a transceiver. The prior art method includes attaching an image file to an e-mail, selecting a plurality of recipients for the e-mail, transmitting the e-mail with the image attachment and a header identifying the plurality of recipients, receiving the e-mail with the image attachment and the header at an e-mail server, and simultaneously providing the e-mail and the image attachment from the e-mail server to the plurality of recipients. |
| **Sony** invented Sony DSC-F1. The DSC-F1 camera, invented prior to December 1996, "offers a combination of features that includes a 1.8-inch LCD screen, built-in 4MB flash memory, high-speed wireless infrared image transfer, flash, rechargeable lithium-ion battery, and a host of recording modes." |
| **Motorola** invented the Envoy at least as early as 1994 (prior to the alleged conception for the '510 patent). The Motorola Envoy includes a memory for storing digital data and a transceiver for transmitting the digital data. The Motorola Envoy can use the transceiver to transmit digital image data and a header identifying multiple selected receiver devices, and the transmitted digital image data can be simultaneously provided to each of the selected receiver devices. |
| **Lotus Development Corporation, now owned by IBM,** invented the Lotus Notes e-mail system at least as early as the late 1980s (prior to the alleged conception for the '510 patent) that renders obvious the '510 patent by describing a method for transmitting a digital image to a plurality of selected receiver units. The method includes providing a handheld digital camera that includes an image sensor, an A/D converter, a memory, and a transceiver. The prior art method includes attaching an image file to an e-mail, selecting a plurality of recipients for the e-mail, transmitting the e-mail with the image attachment and a header identifying the plurality of recipients, receiving the e-mail with the image attachment and the header at an e-mail server, and simultaneously providing the e-mail and the image attachment from the e-mail server to the plurality of recipients. |
| **Olympus** invented digital cameras with transmission capabilities, including the VC 1100, a digital camera including a CCD image sensor, a choice of playback processors and burst mode image capture, at least as early as 1994. |
| **VLSI Vision** invented digital cameras including the PCMCIA camera, a digital camera including an image sensor, an A/D converter, a memory, and a PCMCIA Type II interface for transferring digital image data to any computing device that included a PCMCIA Type II card |

slot, at least as early as 1994.

Should Kodak provide evidence of an earlier conception date, RIM reserves the right to assert that any of the 102(a), (b), and/or (e) prior art is 102(g) prior art.

### D. Prior Art Invalidity of the '161 patent

#### 1. Prior Art Patents and Patent Publications

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that the following additional prior art patents and patent publications anticipate or render obvious one or more asserted claims of the '161 patent under 35 U.S.C. §§102(a), (b), and/or (e) or 35 U.S.C. § 103:

| Prior Art Patents |
|---|
| U.S. Patent No. 4,663,615, Hernandez, *et al.*, issued 05/05/1987 |
| U.S. Patent No. 4,674,040, Barker, *et al.*, issued 06/16/1987 |
| U.S. Patent No. 4,974,194, Barker, et al., issued 11/27/1990 |
| U.S. Patent No. 4,686,522, Hernandez, et al., issued 08/11/1987 |
| U.S. Patent No. 4,683,468, Himelstein, *et al.*, issued 07/28/1987 |

#### 2. Prior Art Publications

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following publications anticipate or render obvious one or more asserted claims of the '161 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Publications |
|---|
| B. A. Barker, I. H. Hernandez, and B. H. Machart, *Creating In-Line Objects Within an Integrated Editing Environment*, IBM Technical Disclosure Bulletin, October 1984, MA-1-600-006 |
| B. A. Barker and I. H. Hernandez, *Common Editing Arrangement for Different Object Types in Text Processing*, IBM Technical Disclosure Bulletin, February 1985, MA-1-600-006 |
| Alfred Poor and Craig Stinson, *Integrated Programs*, PC MAGAZINE, February 25, 1986, pg. |

| |
|---|
| 199 ("*Poor*") |
| Charles Petzold, *Operating Systems*, PC MAGAZINE, February 25, 1986, pg. 211 |
| Paul S. R. Chisholm, *GEM Desktop*, PC MAGAZINE, February 25, 1986, pg. 129 |
| Jeff Duntemann, *Microsoft Windows*, PC MAGAZINE, February 25, 1986, pg. 120 ("*Duntemann*") |
| Paul M. Stafford, *New on the Market*, PC MAGAZINE, April 29, 1986, pg. 51 ("*Stafford*") |
| Dick Pountain, *Intuitive Solution*, BYTE, May 1986, pg. 363 ("*Pountain*") |
| Darrell Woelk, Won Kim, and Willis Luther, *An Object-Oriented Approach to Multimedia Databases*, ACM SIGMOD RECORD, June 1986, Vol. 15, Iss. 2, pg. 311 |
| Jim Forbes, *Microsoft is developing first business software for Windows*, PC WEEK, July 29, 1986, Vol. 3, No. 30 |
| Pat Bellamah, *Microsoft at Work on Network Linking Protocol for Windows*, PC WEEK, July 29, 1986, Vol. 3, No. 30 |
| Michael Rothman, *Atari ST Software Development*, BYTE, September 1986, pg. 223 |
| Tony Pompili, *Integrated software benefits will vary with users' needs*, PC WEEK, September 2, 1986 |
| Stephen Kanzler, *E-mail system to transfer data on Token-Ring*, PC WEEK, September 30, 1986, Vol. 3, No. 39 |
| Harvey Berger, *Dynamic Data Exchange Enhances Application Connectivity*, MICROSOFT SYSTEMS JOURNAL, October 1986, pg. 7 |
| S. Christodoulakis *et al.*, *Multimedia Document Presentation, Information Extraction, and Document Formation in MINOS: A Model and a System*, ACM TRANSACTIONS ON OFFICE INFORMATION SYSTEMS, Vol. 4, No. 4, October 1986, pg. 345 |
| *Microsoft's Windows stands as clear answer to system integration*, PC WEEK, November 18, 1986, Vol. 3, No. 46 |
| *1-2-3-to-AutoCAD Converter, Windows Graph! Expands Graphics Options*, PC MAGAZINE, December 9, 1986, pg. 45 |
| *Many excited about do-it-yourself possibilities of integrated software*, PC WEEK, December 2, 1986, Vol. 3, No. 48 |
| David Hart and Lee Hart, *Microsoft Windows Software Development Kit*, BYTE, June 1987, pg. 223 |
| D. Decouchant, *Design of a Distributed Object Manager for the Smalltalk-80 System*, OOPSLA '86 PROCEEDINGS, September 1986, pg. 444 |
| W. Wulf et al., *Overview of the Hydra Operating System Environment*, PROCEEDINGS OF THE FIFTH ACM SYMPOSIUM ON OPERATING SYSTEMS PRINCIPLES (1975), pg. 122 |
| Henry M. Levy, CAPABILITY-BASED COMPUTER SYSTEMS (Digital Press 1984) |

R. Levin et al., *Policy/Mechanism Separation in Hydra*, PROCEEDINGS OF THE FIFTH ACM SYMPOSIUM ON OPERATING SYSTEMS PRINCIPLES (1975), pg. 132

Ellis Cohen and David Jefferson, *Protection in the Hydra Operating System,* PROCEEDINGS OF THE FIFTH ACM SYMPOSIUM ON OPERATING SYSTEMS PRINCIPLES (1975), pg. 141

W. Wulf et al., *HYDRA: The Kernel of a Multiprocessor Operating System*, COMMUNICATIONS OF THE ACM, Vol. 17, No. 6, June 1974, pg. 337

Richard Snodgrass, *An Object-Oriented Command Language*, IEEE TRANSACTION ON SOFTWARE ENGINEERING, Vol. SE-9, No. 1, January 1983, pg. 1

Adele Goldberg & David Robson, SMALLTALK-80: THE LANGUAGE AND ITS IMPLEMENTATION (1983)

Barbara Liskov et al., *Abstraction Mechanisms in CLU*, COMMUNICATIONS OF THE ACM, Vol. 20, No. 8, August 1977, pg. 564

Barbara Liskov et al., *Exception Handling in CLU*, IEEE TRANSACTION ON SOFTWARE ENGINEERING, Vol. SE-5, No. 6, November 1979, pg. 546

Russell R. Atkinson et al., *Aspects of Implementing CLU* (1978)

Barbara Liskov et al., CLU REFERENCE MANUAL (1979)

Liba Svobodova et al., DISTRIBUTED COMPUTER SYSTEMS: STRUCTURE AND SEMANTICS (Massachusetts Institute of Technology 1979)

Anita K. Jones and Barbara H. Liskov, *A Language Extension for Controlling Access to Shared Data*, IEEE TRANSACTION ON SOFTWARE ENGINEERING, Vol. SE-2, No. 4, December 1978, pg. 277

Anita K. Jones and Barbara H. Liskov, *A Language Extension for Expressing Constraints on Data Access*, COMMUNICATIONS OF THE ACM, Vol. 21, No. 5, May 1978, pg. 358

Edward D. Lazowska et al., *The Architecture of the Eden System* (ACM 1981)

Guy Almes et al., *Edmas: A Locally Distributed Mail System* (ACM 1984)

Guy Almes et al., *The Eden System: A Technical Review*, IEEE TRANSACTIONS ON SOFTWARE ENGINEERING, Vol. SE-11, No. 1, January 1985, pg. 43.

Larry Koved, *The Object Model: A Historical Perspective*, IBM Research Report RC 10809 (October 1984)

William B. Warren et al., *A Tutorial Introduction to Using IDL* (University of North Carolina)

Richard Snodgrass, *Announcement of the IDL Toolkit*, ACM SIGSOFT SOFTWARE ENGINEERING NOTES, Vol. 11, No. 1, January 1986, pg. 111

Barbara Liskov, On Linguistic Support for Distributed Programs, IEEE TRANSACTIONS ON SOFTWARE ENGINEERING, Vol. SE-8, No. 3, May 1982, pg. 203

David Gabel, *Developers Follow Varied Paths to Achieve Text/Graphics Merge Abilities*, PC WEEK, March 17, 1987, Vol. 4, No. 11, pgs. 88-90

Garry Ray, *IBM's Hungry, Heavy Developers Follow Varied Paths to Achieve Text/Graphics*

| |
|---|
| *Merge Abilities*, PC WEEK, February 26, 1985, Vol. 2, No. 8, pgs. 88-90 |
| Charles Petzold, *DOS Alternatives: TopView*, PC MAGAZINE, Vol. 5, No. 4, pgs. 118-20 (February 25, 1986) ("*Petzold*") |
| Eric Sandberg-Diment, *Personal Computers; Numbers and Words*, N.Y. TIMES, June 30, 1987, *available at* http://www.nytimes.com/1987/06/30/science/personal-computers-numbers-and-words.htm |
| Marc Stern, *Desqview Clarifies Windowing System*, 7 INFOWORLD 39, 39-40 (Sept. 8, 1985) |
| Michael Kuppin, DESQVIEW VERSION 2 (Quarterdeck Office Systems 1987) |
| ISO 8879:1986, INFORMATION PROCESSING – TEXT AND OFFICE SYSTEMS – STANDARD GENERALIZED MARKUP LANGUAGE (SGML) |
| Wulf, Levin, and Harbison, HYDRA/C.MMP: AN EXPERIMENTAL COMPUTER SYSTEM (1981) |

### 3.     Prior Art Public Knowledge/Use/Sales/Offers for Sale

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends the following prior art anticipates or renders obvious one or more asserted claims of the '161 patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Prior Art Public Knowledge/Uses/Sales/Offers for Sale |
|---|
| **Microsoft Dynamic Data Exchange (DDE)** was known, offered for sale, sold, and/or used in the United States on or before August 1986.  DDE, and programs utilizing DDE, allows multitasking between applications, including sending messages between applications for sharing and exchanging data between applications. Applications can use the DDE protocol for one-time data transfers and for continuous exchanges in which applications send updates to one another as new data becomes available. |
| **Framework II 1.0** was known, offered for sale, sold, and/or used in the United States on or before February 1986.  Framework II is an integrated document development software system capable of generating documents including text, graphics, databases, and spreadsheets and interactively linking between tasks in the system. |
| **TopView** was known, offered for sale, sold, and/or used in the United States on or before August 1984 by International Business Machines.  TopView is a multitasking, operating environment for use with personal computers. TopView allows users to multi-task distinct software applications handling distinct data types such as data processor text, figures, and spreadsheets. |
| **DESQView** was known, offered for sale, sold, and/or used in the United States on or before July 1985.  DESQView is a multitasking, operating environment for use with personal computers. DESQView allows users to multi-task distinct software applications handling distinct data types |

such as data processor text, database records, spreadsheet cell values, and calendar items.

**GEM Desktop** was known, offered for sale, sold, and/or used in the United States on or before February 1985. GEM Desktop is an operating environment that allows users to switch between applications operable to perform operations on data of corresponding types.

**Graph-in-the-Box** was known, offered for sale, sold, and/or used in the United States on or before April 1986. Graph-in-the-Box is a program for generating charts and graphs. Graph-in-the-Box can swap data with other compatible programs using data of different types, such as database programs and spreadsheet programs.

**Intuitive Solution** was known, offered for sale, sold, and/or used in the United States on or before August 1984. Intuitive Solution is an object-oriented form processing system. Intuitive Solution can invoke programs identified as associated with a form.

**Atari TOS** was known, offered for sale, sold, and/or used in the United States on or before November 1985. Atari TOS is an operating system for use on personal computers. Through Atari TOS, applications can share objects of different data types between applications.

**Lotus Symphony** was known, offered for sale, sold, and/or used in the United States on or before July 1984. Symphony is an integrated software packages featuring applications such as spreadsheets, word processing, database management, communications and graphics. Symphony includes transfer of data from one application to another.

**MINOS** was known, offered for sale, sold, and/or used in the United States on or before October 1986. MINOS is an object-oriented multimedia information system that provides integrated facilities for creating and managing complex multimedia objects.

**Microsoft Windows Software Development Kit** was known, offered for sale, sold, and/or used in the United States on or before June 1987. Windows Development Kit, and programs utilizing the Windows Development Kit, include the use of Microsoft DDE for the development of programs for use in Windows.

**Elmwood** was known, offered for sale, sold, and/or used in the United States on or before November 1986. Elmwood is an object-oriented operating system environment including means for identifying a reference to an object and invoking a program corresponding to the identified object.

**Smalltalk**, including Smalltalk 80, was known, offered for sale, sold, and/or used in the United States on or before December 1983. Smalltalk is an object oriented programming language. Objects in Smalltalk can reference other objects. Smalltalk can be used to develop programs with means for performing an operation with respect to a first type of data, means for identifying a reference to a second type of data in a data structure containing a first type of data, and invoking an identified program including means to perform operations on the second type of data.

**Interface Description Language (IDL)** was known, offered for sale, sold, and/or used in the United States on or before December 1982. IDL is a notation system for describing the characteristics of data structures passed among a collection of cooperating programs.

**Eden** was known, offered for sale, sold, and/or used in the United States on or before December 1981. Eden, and programs utilizing Eden, utilize typed object data structures and are operable to

| |
|---|
| identify objects used on an Eden system and invoke programs corresponding to the objects. |
| **Write In** was known, offered for sale, sold, and/or used in the United States on or before June 1987.   Write In is a program for integrating charts and graphs within a word processing document.   Write In can facilitate communication between word processing and spreadsheet/graphics programs. |
| **In Word** was known, offered for sale, sold, and/or used in the United States on or before March 1987.   In Word is a program for integrating charts and graphs within a word processing document.     In Word can facilitate communication between word processing and spreadsheet/graphics programs. |
| **Incredible Jack** was known, offered for sale, sold, and/or used in the United States on or before December 1982.  Incredible Jack is an integrated program combining applications for word processing, database management, business graphics, and spreadsheet development.   Data objects edited within Incredible Jack programs can be linked and shared between programs responsible for editing objects of different types. |
| **Jack2** was known, offered for sale, sold, and/or used in the United States on or before December 1982.  Jack2 is an integrated program combining applications for word processing, database management, business graphics, and spreadsheet development.  Data objects edited within Jack2 programs can be linked and shared between programs responsible for editing objects of different types. |
| **4Word** was known, offered for sale, sold, and/or used in the United States on or before June 1987.  4Word is a program for integrating charts and graphs within a word processing document.  4Word can facilitate communication between word processing and spreadsheet/graphics programs. |
| **Omniview (also known as "TaskView")** was known, offered for sale, sold, and/or used in the United States on or before August 1987.  Omniview is a multitasking, operating environment for use with personal computers. Omniview allows users to multi-task distinct software applications handling distinct data types such as data processor text, figures, and spreadsheets. |
| **Kinetic Graphics System** was known, offered for sale, sold, and/or used in the United States on or before March 1987.  Kinetic Graphic System is a system including a series of program modules that work together to produce graphics with text included or text with graphics included. |
| **Graphlink** was known, offered for sale, sold, and/or used in the United States on or before March 1987.  Graphlink is a program for integrating charts and graphs within a word processing document.  Graphlink can facilitate communication and cooperation between compatible word processing and graphics programs. |
| **Inset v. 1.0** was known, offered for sale, sold, and/or used in the United States on or before March 1987.  Inset is a program for integrating charts and graphs within a word processing document.   Inset can facilitate communication and cooperation between compatible word processing and graphics programs. |
| **CLU** was known, offered for sale, sold, and/or used in the United States on or before December 1983.  CLU is an object-oriented programming language suitable for use in building an operating |

system for use in a data processing system.  In CLU, and programs utilizing CLU, objects can refer to other objects.  These references can be identified and result in the invocation of programs designated to perform operations on the identified object.

**Hydra** was known, offered for sale, sold, and/or used in the United States on or before December 1974.  Hydra is an object-oriented operating system environment.  Hydra, and programs working with Hydra, include object-based programming with object referencing other objects of different types.  Identifying objects can result in the invocation of programs designated to perform operations on the identified object.

**Advance Program-to-Program Communications (APPC)** was known, offered for sale, sold, and/or used in the United States on or before July 1986.  APPC is a programming interface standard that allows interconnected systems to communicate and share the processing of programs.

**Windows Graph!** was known, offered for sale, sold, and/or used in the United States on or before December 1986.  Windows Graph! is a graphics software package including a Windows module with DDE functionality allowing Windows Graph! to link worksheets into charts.

**SGML** was known and/or used (and systems utilizing SGML were known, offered for sale, sold, and/or used) in the United States on or before December 1986.  For example, the ISO (International Organization for Standardization) released International Standard 8879, Information processing -- Text and office systems -- Standard Generalized Markup Language (SGML).  Standard Generalized Markup Language standardizes the application of the generic coding and generalized markup concepts. It provides a coherent and unambiguous syntax for describing whatever a user chooses to identify within a document, including data and data types. SGML was based on **Generalized Markup Language (GML)** developed by IBM in the 1960s.

### 4.    Prior art under 35 U.S.C. § 102(f)

Kodak has in its possession, custody, or control information related to or pertaining to prior art under 35 U.S.C. § 102(f) but has yet to produce that information in discovery.  RIM will supplement these Invalidity Contentions if and when Kodak produces the information and RIM has had the opportunity to obtain and analyze that information.

### 5.    Prior Art under 35 U.S.C. § 102(g)

In addition to and including prior art disclosed in the invalidity contentions incorporated by reference herein, RIM contends that each of the asserted claims of the '161 patent is invalid under 35 U.S.C. § 102(g) because before the alleged conceptions of the '161 patent, it is expected that evidence will show that the invention was made in this country by another who had

not abandoned, suppressed, or concealed it.  RIM sets forth below, to the extent currently known, the identities of the persons or entities involved in and the circumstances surrounding the making of the prior art invention before the applicant of the '161 patent:

| **Prior Art under 35 U.S.C. § 102(g)** |
| --- |
| **Ashton Tate** invented Framework II 1.0, an integrated document development software system capable of generating documents including text, graphics, databases, and spreadsheets and interactively linking between tasks in the system, at least as early as February 1986. |
| **Microsoft** invented Dynamic Data Exchange for its Microsoft Windows operating system, a software protocol allowing multitasking between applications, including sending messages between applications for sharing data and exchanging data, at least as early as July 1986. |
| **IBM** invented TopView for its IBM PC, a multitasking, operating environment for use with personal computers, allowing users to multi-task distinct software applications handling distinct data types such as data processor text, figures, and spreadsheets, at least as early as February 1985. |
| **Quarterdeck Office Systems** invented DESQView, a multitasking, operating environment for use with personal computers, allowing users to multi-task distinct software applications handling distinct data types such as data processor text, graphics, figures, and spreadsheets, at least as early as February 1986. |
| **Xerox** invented Smalltalk-80, an object oriented programming language that can be used to develop programs with means for performing an operation with respect to a first type of data, means for identifying a reference to a second type of data in a data structure containing a first type of data, and invoking an identified program including means for performing operations on the second type of data, at least as early as December 1983. |
| **Digital Research Inc.** invented GEM Desktop, an operating environment that allows users to switch between applications operable to perform operations on data of corresponding types, at least as early as February 1986. |
| **New England Software, Inc.** invented Graph-in-the-Box, a program for generating charts and graphs, at least as early as April 1986.  Graph-in-the-Box can swap data with other compatible programs using data of different types, such as database programs and spreadsheet programs. |
| **Intuitive Systems, Ltd.** invented Intuitive Solution, an object-oriented form processing system. Intuitive Solution  can invoke programs identified as associated with a form, at least as early as May 1986. |
| **Atari** and **Digital Research Inc.** invented Atari TOS for Atari's ST personal computer, an operating system for use on personal computers allowing applications to share objects of different data types between applications, at least as early as November 1985. |
| **Lotus Development Corp.** invented Symphony, an integrated software packages featuring applications such as spreadsheets, word processing, database management, communications and graphics, at least as early as July 1984.  Symphony includes transfer of data from one application to another. |

**University of Waterloo** invented MINOS, an object-oriented multimedia information system that provides integrated facilities for creating and managing complex multimedia objects, at least as early as February 1985.

**Sunny Hill Software** invented TaskView, a multitasking, operating environment for use with personal computers allowing users to multi-task distinct software applications handling distinct data types such as data processor text, figures, and spreadsheets, at least as early as July 1987.

**Business Solutions, Inc.** invented Incredible Jack, an integrated program combining applications for word processing, database management, business graphics, and spreadsheet development, allowing data objects edited within Jack programs to be linked and shared between programs responsible for editing objects of different types, at least as early as December 1982.

**Blossom Software** invented Write In, a program for integrating charts and graphs within a word processing document, facilitating communication between word processing and spreadsheet/graphics programs, at least as early as June 1987.

**Funk Software** invented In Word, a program for integrating charts and graphs within a word processing document, facilitating communication between word processing and spreadsheet/graphics programs, at least as early as March 1987.

**American Programmers Guild** invented Inset v. 1.0, a program for integrating charts and graphs within a word processing document, facilitating communication between compatible word processing and graphics programs, at least as early as March 1987.

**Turner-Hall Publishing** invented 4Word, a program for integrating charts and graphs within a word processing document, facilitating communication between word processing and spreadsheet/graphics programs, at least as early as March 1987.

**Kinetic Graphics, Inc.** invented Kinetic Graphic Systems, a system including a series of program modules that work together to produce graphics with text included or text with graphics included, at least as early as March 1987.

**Micrografx** invented Windows Graph!, a graphics software package including a Windows module with DDE functionality allowing Windows Graph! to link worksheets into charts, at least as early as December 1986.

**Barbara Liskov and Steve Ziles** invented CLU, a computer programming language and system including means for performing an operation with respect to a first type of data, identifying a reference to a second type of data in a data structure containing a first type of data, and invoking an identified program with means for performing operations on the second type of data, at least as early as 1973.

**Carnegie-Melon University** invented Hydra, a computer software system including or facilitating means for performing an operation with respect to a first type of data, identifying a reference to a second type of data in a data structure containing a first type of data, and invoking an identified program with means for performing operations on the second type of data, at least as early as 1974.

**University of Washington** invented Eden, a computer software system utilize typed object data structures, allowing programs to identify objects used on a Eden system and invoke programs corresponding to the objects, at least as early as 1979.

**Sinclair Research** invented QDOS, a software product including means for performing an operation with respect to a first type of data, identifying a reference to a second type of data in a data structure containing a first type of data, and invoking an identified program with means for performing operations on the second type of data at least as early as February 1985 for its Sinclair QL.

**The ISO (International Organization for Standardization)** invented International Standard 8879, Information processing -- Text and office systems -- Standard Generalized Markup Language (SGML). Standard Generalized Markup Language standardizes the application of the generic coding and generalized markup concepts. This standard was released at least as early as October 1986. Also, SGML was based on Generalized Markup Language (GML) invented by **IBM** in the 1960s.

Should Kodak provide evidence of an earlier conception date, RIM reserves the right to assert that any of the 102(a), (b), and/or (e) prior art is 102(g) prior art.

## III.    LOCAL PATENT RULES 3-3(B) AND (C)

Whether each item of prior art anticipates each asserted claim or renders it obvious. If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified.

A chart identifying where specifically and in detail in each alleged item of prior art each element of each asserted claim is found, including for each element that the party contends is governed by 35 U.S.C. § 112(6), the identity of the structure, act, or material in each item of prior art that performs the claimed function. P.R. 3-3 (a)(1) and (2).

Generally, it would have been obvious to one of ordinary skill in the art to modify a particular reference or to combine any of these references to arrive at the claimed invention. Specifically, *KSR*[6] held that, among other things, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1745-46; *see also id.* at 1740 ("a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions"). In particular, a patent is obvious where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill are not in material dispute, and the obviousness of the claim is

---

[6]     *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (2007).

apparent in light of these factors." *KSR*, S.Ct. at 1745-46.  Indeed, the *KSR* court found that "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* at 1740.  Each combination of familiar elements according to known methods is obvious here because it yielded predictable results.  And, in combination, each element merely performs the same function as it does separately.

Further, beyond specific motivations identified in the present charts, motivation to modify a particular reference or to combine any two or more of the identified references comes from (1) the nature of the problem being solved; (2) the teachings of the prior art; (3) the knowledge of persons of ordinary skill in the art; (4) the fact that all of the references teach systems and methods related to the subject matter of the Patents-in-Suit; and (5) one would be motivated by considerations of efficiency, effectiveness, convenience, cost-savings, and accessibility, to combine the various teachings.  Moreover, market forces such as development and prevalence of digital technology and data, the increasing interest in software development and engineering, and the increased availability of personal computers and the Internet prompted such modifications or combinations.  Additionally, one would be motivated to address the alleged problems or achieve the purported objectives identified in each Background of the Patents-in-Suit.[7]

---

[7]     For example, the '335 patent asserts that "an object of the invention is to collapse the processing chain between image capture and resolution reduction so that problems caused by intervening processing are avoided. Another object is to fully utilize the collapsed processing interval for continuous photography so that a subsequent circuit element, such as the removable memory, does not appreciably limit the attainable speed.  A further object is to permit the user to select an image record size in accordance with the need, whether for continuous photography or added storage for any other reason." '335 patent, Background.

In another example, the '218 patent alleges that "it would be desirable to avoid the necessity of generating an NTSC format signal in order to reduce the complexity of the required circuitry. In a totally digital system, that is, both the recording and display channels are digital, it is further desirable to minimize incompatibility between the channels. The problem is to achieve these objective in an architecture that minimizes cost and complexity and maximizes user handling." '218 patent, Background.

In yet another example, the '510 patent asserts that "it is an object of the invention to provide an electronic camera system that includes a programmable transmission capability for selectively transmitting electronic image data to a plurality of remote receive units." '510 patent, Background.

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, each of the asserted claims of the '335 patent is anticipated by and/or obvious in view of one ore more of items of the prior art identified above in Sections **II.A.1** (list of prior art patents), **II.A.2** (list of prior art publications), **II.A.3** (list of prior art offered for sale or publicly used or known), and/or **II.A.5** (list of prior invention prior art), alone or in combination with each other or with the prior art incorporated by reference herein.

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, each of the asserted claims of the '218 patent is anticipated by and/or obvious in view of one ore more of items of the prior art identified above in Sections **II.B.1** (list of prior art patents), **II.B.2** (list of prior art publications), **II.B.3** (list of prior art offered for sale or publicly used or known), and/or **II.B.5** (list of prior invention prior art), alone or in combination with each other or with the prior art incorporated by reference herein.

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, each of the asserted claims of the '510 patent is anticipated by and/or obvious in view of one ore more of items of the prior art identified above in Sections **II.C.1** (list of prior art patents), **II.C.2** (list of prior art publications), **II.C.3** (list of prior art offered for sale or publicly used or known), and/or **II.C.5** (list of prior invention prior art), alone or in combination with each other or with the prior art incorporated by reference herein.

In addition to and including the prior art disclosed in the invalidity contentions incorporated by reference herein, each of the asserted claims of the '161 patent is anticipated by and/or obvious in view of one ore more of items of the prior art identified above in Sections **II.D.1** (list of prior art patents), **II.D.2** (list of prior art publications), **II.D.3** (list of prior art offered for sale or publicly used or known), and/or **II.D.5** (list of prior invention prior art), alone or in combination with each other or with the prior art incorporated by reference herein.

RIM has attached charts identifying examples of prior art and prior art combinations that anticipates and/or renders obvious each of the asserted claims of the '335 patent in **Exhibit A**, the asserted claim of the '218 patent in **Exhibit B**, the asserted claim of the '510 patent in

**Exhibit C**, and the asserted claim of the '161 patent in **Exhibit D** (the "Invalidity Charts").[8]  The combinations of references demonstrating the obviousness of each respective patent under 35 U.S.C. § 103 are merely exemplary and are not intended to be exhaustive.

Additional obviousness combinations of the prior art references identified herein and incorporated by reference are possible, and RIM reserves the right to use any such combination(s) in this litigation.  In particular, RIM is currently unaware of the extent, if any, to which Kodak will contend that limitations of the claims at issue are not disclosed in the art identified by RIM as anticipatory.  To the extent that an issue arises with any such limitation, RIM reserves the right to identify other references that would have made obvious the additional, allegedly missing limitation to the disclosed device or method of operation.

For the public uses identified above and incorporated by reference, RIM is investigating the identities of the individuals who knew about and/or were involved in the making, first public use, offer for sale, and/or sale of these systems.  RIM is also investigating the exact date that these systems were first made, first publicly used, offered for sale and/or sold.  In addition, RIM is currently investigating the dates of conception and reduction to practice of these systems and when these systems were first known or used by others.  In the course of its investigation, RIM may identify additional prior art documents describing these systems that may also anticipate and/or render obvious as invalidating printed publications.  Any citation to one or more of the prior art references, or other prior art references regarding these systems should be construed to constitute not only a citation to the prior art reference itself, but also a reference to the system itself.  Discovery is ongoing in the case, and RIM will supplement if and when more information becomes available.[9]

---

[8]        To the extent not identified above, Defendants identify all references listed in the charts of **Exhibits A**, **B**, **C**, and **D** as prior art references anticipating and/or rendering obvious one or more claims of the '335 patent, '218 patent, '510 patent, or '161 patent respectively.

[9]        RIM is continuing to gather information on all of the aforementioned prior art, through subpoena, informal interviews and document collection, etc., to various third parties including, but not limited to, Polaroid, IBM, AT&T, Olympus, Alcatel-Lucent, Sun, Sony, Nokia, Nikon, and others.  RIM will supplement these Invalidity Contentions when RIM has had the opportunity to obtain and analyze any additional information.

## IV.     LOCAL PATENT RULE 3-3(D)

Any grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2), or enablement or written description under 35 U.S.C. § 112(1), of any of the asserted claims. PR 3-3(a)(4).

### A.     Invalidity of Claim 15 of the '218 patent under § 112

The claim element "a color display for presenting at least some of the motion images of the series of motion images corresponding to the captured images of the scene, the color display having an arrangement of color display pixels including at least three different colors in a pattern different from the first color pattern" fails to comply with the written description and/or enablement requirements of 35 U.S.C. § 112.

RIM also incorporates by reference all grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) and lack of enablement or written description under 35 U.S.C. § 112(1) identified by previous defendants or licensees.[10]

### B.     Invalidity of Claim 1 of the '510 patent under § 112

The claim element "receiving the transmitted digital image data and the header, and providing the transmitted digital image data to each of the selected receiver units, [wherein] the digital image data is transmitted once from the handheld digital camera, and is simultaneously provided to at least two different receiver units" fails to comply with the written description and/or enablement requirements of 35 U.S.C. § 112.

RIM also incorporates by reference all grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) and lack of enablement or written description under 35 U.S.C. § 112(1) identified by previous defendants or licensees.

### C.     Invalidity of Claim 1 of the '161 patent under § 112

The claim element "a plurality of programs…, each program including a means for performing at least one operation with respect to at least one corresponding type of data, the

---

[10]     *See, e.g.*, notes 2 and 4.

means for performing at least one operation being responsive to a request to perform an operation of the at least one operation" is invalid as indefinite and/or lacking written description and an enabling disclosure because the specification of the '161 patent fails to describe sufficient structure that is clearly linked to the claimed function.

Further, the claim element "a plurality of programs…, each program including…means responsive to the identification of a reference to a second type of data for generating a request for an operation with respect to the second type of data, each request including an identification of the second type of data and at least one operation to perform with respect to the second type of data" is invalid as indefinite and/or lacking written description and an enabling disclosure because the specification of the '161 patent fails to describe sufficient structure that is clearly linked to the claimed function.

Additionally, the claim element "means for invoking the identified program and communicating to the identified program the identification of the second type of data, wherein a program can both request invocation of other programs and can itself be invoked by other programs." is invalid as indefinite and/or lacking written description and an enabling disclosure because the specification of the '161 patent fails to describe sufficient structure that is clearly linked to the claimed function.

RIM also incorporates by reference all grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) and lack of enablement or written description under 35 U.S.C. § 112(1) identified by previous defendants or licensees.

## V.     STATEMENT OF PRIORITY DATE

While discovery is ongoing for all Patents-in-Suit, the asserted claims of the '510 patent are not entitled to a priority date earlier than the priority date listed on the face of the issued patent of January 19, 1999.

Dated:  July 15, 2009

By: /s/ Thomas H. Reger II
    Thomas M. Melsheimer
    Texas Bar No. 13922550
    melsheimer@fr.com
    Neil J. McNabnay
    Texas Bar No. 24002583
    mcnabnay@fr.com
    Thomas H. Reger II
    Texas Bar No. 24032992
    reger@fr.com
    FISH & RICHARDSON P.C.
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    Telephone:  (214) 747-5070
    Facsimile:  (214) 747-2091

    OF COUNSEL:
    Ruffin B. Cordell
    Texas Bar No. 04820550
    cordell@fr.com
    FISH & RICHARDSON P.C.
    1425 K Street N.W., 11th floor
    Washington, DC 20005-3500
    Telephone:  (202) 783-5070
    Facsimile:  (202) 783-2331

    Attorneys for Plaintiffs, RESEARCH IN MOTION LTD. and RESEARCH IN MOTION CORP.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 15, 2009 to all counsel of record via overnight mail.

/s/ Thomas H. Reger II_____
Thomas H. Reger II